## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| GINA M. R., <br><br> *Plaintiff,* <br><br> v. <br><br> FRANK BISIGNANO, <br> Commissioner of Social Security, <br><br> *Defendant.* | Case No. 1:23-cv-01391-RLH |

### ORDER & OPINION

Plaintiff Gina M. R. ("Gina") filed this suit to challenge an administrative law judge's finding that she was not disabled under the Social Security Act and thus not eligible to receive supplemental security income. Upon review, the Court finds that substantial evidence supported the ALJ's decision, so the Court affirms.[1]

### LEGAL STANDARDS

**I.  The Social Security Act**

The Social Security Act (the "Act")—and the regulations adopted under it—explain in detail who is eligible to receive social security benefits. To qualify, a claimant must be sixty-five years of age, blind, or disabled. 20 C.F.R. § 416.202(a)(1)–(3). A claimant is disabled if she cannot "do any substantial gainful activity" because she suffers from "any medically determinable physical or mental impairment" that is either life-threatening or chronic. 42 U.S.C. § 423(d)(1)(A).

---

[1] The parties have consented to final disposition of this case by a magistrate judge. (*See* Doc. 6 at 1.)

To implement that definition, the Social Security Administration has developed a five-step evaluation process. *See* 20 C.F.R. § 416.920(a)(1). The steps proceed sequentially:

> **Step One.** Is the claimant currently engaged in substantial gainful activity?
>
> **Step Two.** Does the claimant have a severe mental or physical impairment—i.e., an impairment that significantly limits their ability to do basic work activities—or a combination of them?
>
> **Step Three.** Does the mental or physical impairment appear on an enumerated list (called "listings")? If not, is it nonetheless medically equivalent to one of those listings?
>
> **RFC Assessment.** What is the claimant's residual functional capacity (RFC)—that is, the most they can still do despite their limitations?
>
> **Step Four.** Based on the claimant's RFC, can they perform their past work?
>
> **Step Five.** Based on the claimant's RFC, can they perform other work?

*See id.* § 416.920(a)(4)(i)–(v). The ALJ begins, of course, at step one. If it yields an affirmative answer (i.e., the claimant is working), the claimant is not disabled, and the inquiry ends. If step two yields a negative answer (i.e., the claimant does not have a severe impairment), the claimant is not disabled, and the inquiry ends there. *See id.* §416.920(a)(4)(i)–(ii). Step three, however, is dispositive: If the claimant's impairment appears on a listing, the claimant is considered disabled and eligible for benefits. *See id.* § 416.920(a)(4)(iii). If the claimant's impairment does not appear on or medically equal a listing, the ALJ crafts an "RFC Assessment," which analyzes "the claimant's ability to do physical and mental work activities on a regular and continuing basis despite limitations from [their] impairment." *Moore v. Colvin*, 743

F.3d 1118, 1121 (7th Cir. 2014). If either steps four or five yield an affirmative answer (i.e., the claimant can perform their old job or adjust to a new one in light of the RFC), the claimant is not disabled. *See* 20 C.F.R. § 416.920(a)(4)(iv)–(v).

The claimant has the burdens of production and persuasion through step four. *See Wilder v. Kijakazi*, 22 F.4th 644, 651 (7th Cir. 2022). At step five, the burden shifts to the Commissioner to show that the claimant can engage in some type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

## II. Standard of Review

A court's function on review is limited to determining whether the ALJ's findings are supported by substantial evidence and based upon proper legal criteria. *See Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Thus, Courts may not try the case de novo or supplant the ALJ's factual findings with their own. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). As such, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence, in turn, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (explaining that the threshold "is not high"); *Schneck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004) ("Substantial evidence may be less than the weight of the evidence, and more than a scintilla." (citation modified)). Yet, although the ALJ's

decision commands deference, courts may not simply "rubber stamp" it. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002).

The Seventh Circuit has emphasized that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). Instead, ALJ's need only "provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow . . . a reviewing court, to assess the validity of the agency's ultimate findings and afford [the plaintiff] meaningful judicial review.'" *Id*. at 1054 (alteration in original) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary"—not the courts. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). Therefore, courts reviewing for substantial evidence may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [thier] judgment for the ALJ's determination so long as substantial evidence supports" the decision under review. *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

In short, the ALJ must build "an accurate and logical bridge" between the evidence in the record and his conclusions. *Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013).

4

## BACKGROUND

### I. Gina

Gina was born in 1971 and has received a high school education. (R. at 224, 228.[2]) She was previously employed as a housekeeper, a certified nursing assistant, and a gas station attendant. (R. at 43, 228.) She has also performed maintenance work at rental properties, including cleaning, painting, and yardwork. (R. at 43.) On February 1, 2020, Gina suffered a heart attack and has not worked since that date. (R. at 227.)

### II. Proceedings Below

In May 2020, Gina filed an application with the Social Security Administration for supplemental security income, alleging that she has been disabled since February 1, 2020—the date of her heart attack. (R. at 15.) Her application was initially denied in August 2021 and denied upon reconsideration the following April. (R. at 15.) Gina then requested a hearing before an ALJ, which took place in February 2023. (R. at 34.) Present at that hearing were Gina, her attorney, and a vocational expert. (R. at 36.) Both Gina and the vocational expert testified. (R. at 35.)

After the hearing, the ALJ issued a written opinion concluding that Gina was not disabled and therefore not entitled to supplemental income. (R. at 29.) In response, Gina asked the Appeals Council to review the ALJ's decision, but her request was denied. (R. at 1.) Gina then filed a complaint in this Court to challenge the ALJ's decision, followed by a brief. (Docs. 1, 7.) The Commissioner of Social

---

[2] "R." refers to the Certified Administrative Record filed on December 15, 2025. (Doc. 4.) The page numbers refer to the black page numbers at the bottom right of the transcript, rather than the green page numbers generated automatically by CM/ECF at the top right of the page.

5

Security (the "Commissioner") filed an opposition urging the Court to affirm the ALJ's decision, (Doc. 11), to which Gina has replied, (Doc. 12.)

### III. The ALJ's Decision

In his opinion, the ALJ used the five-step evaluation outlined above to determine whether a Gina is disabled. At step one, he determined that, although Gina had worked since she filed her application, the work "did not rise to the level of substantial gainful activity." (R. at 17.) At step two, the ALJ found that Gina had the following severe impairments: fibromyalgia, plantar fasciitis, a history of ischemic heart disease, and carpel tunnel syndrome. (R. at 17.) At step three, he concluded that none of those impairments met or medically equaled any of the listed impairments. (R. at 19.) Before proceeding to step four, the ALJ crafted the following RFC assessment:

> [Gina] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) with the following non-exertional limitations. She should never climb ladders, ropes or scaffolds. She should climb ramps and/or stairs, balance, stoop, kneel, crouch and/or crawl no more than occasionally. She should reach, handle and finger no more than frequently. She should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation.

(R. at 20–21.) At step four, the ALJ found that Gina's RFC does not allow her to perform any of her past work. (R. at 27.) Finally, at step five, the ALJ determined that—given Gina's age, education, and experience—there exist a significant number of jobs in the national economy that Gina would be able to perform. (R. at 28.) Examples of those jobs included a cleaner and a sales attendant. (R. at 28.) Based on his findings at each step, the ALJ concluded that Gina "has not been under a

6

disability, as defined in the Social Security Act, since May 13, 2020, the date the application was filed." (R. at 29.)

## DISCUSSION

Gina's challenges two aspects of the ALJ's RFC assessment. First, she takes issue with how the ALJ considered the evidence and weighed the medical opinions in the record. Second, she argues that the ALJ gave insufficient weight to her testimony about her pain. Before turning to those arguments, the Court briefly discusses an ALJ's obligations when conducting an RFC assessment.

As stated, the RFC refers to "the claimant's ability to do physical and mental work activities on a regular and continuing basis despite limitations from [her] impairment." *Moore*, 743 F.3d at 1121. That determination involves two steps. First, the ALJ must "consider whether there is an underlying 'determinable physical or mental impairment that could reasonably be expected to produce the [claimant's] symptoms.'" *Schneck*, 357 F.3d at 701 (quoting SSR 96-7p).[3] If there is, the ALJ must then "evaluate the 'intensity, persistence, and functionally limiting effects of the symptoms'"—that is, the ALJ must determine the extent to which the claimant's symptoms limit her ability to work. *Id.* (quoting *Stevenson v. Charter*, 105 F.3d 1151, 1154 (7th Cir. 1997)).

---

[3] Although Social Security Ruling 96-7p has been superseded on other grounds by SSR 16-3p, the quoted portion has not been altered. *See* SSR 16-3p, 81 Fed. Reg. 14166 (Mar. 28, 2016).

7

Here, the ALJ determined that Gina's impairments—namely, her fibromyalgia, plantar fasciitis,[4] history of ischemic heart disease, and carpal tunnel syndrome—"could be expected to cause significant symptoms." (R. at 26.) That finding triggered the second step in crafting the RFC, which required the ALJ to evaluate the extent to which Gina in fact experiences symptoms that limit her ability to work. It is the ALJ's analysis at this step that Gina challenges.

## I.    The ALJ's Evaluation of the Medical Opinion Evidence

Gina first contends that the ALJ improperly discredited the medical opinion evidence in the record. (Pl. Br. 10.[5]) To that end, she says that the ALJ "found all of the opinions in the record to be only 'partially persuasive,'" substituted his own judgment for those of medical professionals, and failed to explain how he arrived at the specific RFC findings. (Pl. Br. 10–11.) The Commissioner retorts that the ALJ "devoted seven pages to a discussion of [Gina's] testimony and subjective reports, a summary of the relevant medical evidence, and a discussion on the persuasiveness of the medical opinion evidence." (Def. Br. 3–4.[6]) The Court agrees.

Gina has not satisfied the burden imposed on social security plaintiffs who seek to challenge an ALJ's determinations about the persuasiveness of medical opinions. Indeed, those determinations are "entitled to substantial deference by a reviewing court and will not be overturned unless the claimant can show that the finding is

---

[4] Plantar fasciitis "involves inflammation of a thick band of tissue that runs across the bottom of each foot and connects the heel bone to the toes." Plantar Fasciitis, Mayo Clinic (Sept. 7, 2023), https://www.mayoclinic.org/diseases-conditions/plantar-fasciitis/symptoms-causes/syc-20354846.
[5] "Pl. Br." refers to Gina's brief. (*See* Doc. 7.)
[6] "Def. Br." refers to the Commissioner's brief. (*See* Doc. 11.)

8

'patently wrong.'" *Wiszowaty v. Astrue*, 861 F. Supp. 2d 924, 942 (N.D. Ind. 2012) (quoting *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006)). So long as the ALJ considers "the entire case record, including the objective medical evidence, the individual's own statements about symptoms," and other relevant information, this Court is in no position to overturn an ALJ's determination of the persuasiveness of medical opinions. *Id.* (quoting SSR 96-7p).

Although Gina asserts that the ALJ "failed to rely" on medical opinion evidence, (Pl. Br. 10), she does not specify which opinions the ALJ supposedly ignored. Nor does she indicate how, if the ALJ to *did* credit those opinions, he would have concluded that Gina's RFC was more limited. For her part, Gina is correct to say that the ALJ found the opinions of state agency consultants "partially persuasive." (R. at 27.) But the ALJ was entitled to make that finding, so long as he justified it by reference to the "entire case record," *Wiszowaty*, 861 F. Supp. 2d at 942.

Turning to the record, the opinions of State Agency Consultants on which Gina relies support—rather than undermine—the ALJ's RFC Assessment. When Gina initially applied for benefits, the state agency consultant found that Gina could occasionally lift or carry twenty pounds and frequently lift or carry ten pounds. (R. at 66.) That finding therefore placed Gina in the category of people who could perform "light work." 20 C.F.R. § 416.967(b). The consultant further found that Gina should avoid work environments that would expose her to fumes, odors, dusts, or gasses. (R. at 67.) And the state agency consultant who handled Gina's claim on reconsideration, like the consultant before them, concluded that Gina had a "light RFC" and that Gina

9

possessed the same limitations on what she could lift or carry. (R. at 73.) The ALJ's RFC assessment was therefore consistent with the opinions of those consultants. Indeed, the ALJ concluded that Gina had a light RFC and that she "should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation." (R. at 20–21.) Gina's assertion that the ALJ "reject[ed] . . . all of the opinion evidence in favor of his own lay interpretation of the medical evidence" is therefore not supported by either the ALJ's opinion or the administrative record.

Gina also argues that the ALJ "fail[ed] to provide an explanation for the RFC." (Pl. Br. 12.) She contends that the ALJ "did not provide a narrative summary describing how he arrived at the specific conclusions," and instead "simply stated that he consider [sic] the longitudinal record and [Gina's] testimony." (Pl. Br. 11.) The Court reads the ALJ's opinion differently.

"Essentially, an ALJ's RFC analysis must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022) (internal quotations omitted). The Court will therefore "not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Put simply, the Court must affirm an ALJ's decision so long as it constructs a "logical bridge" between the evidence in the record and his conclusions. *Roddy*, 705 F.3d at 638.

Here, the ALJ discussed the medical complications that Gina experienced in the immediate aftermath of her heart attack. (*See* R. at 22.) From there, the ALJ recounted Gina's visits to the doctor in March, July, August, and November of 2020. (*See* R. at 22–23.) The ALJ's discussion then continued through Gina's medical history in 2021, which included visits to the doctor for her plantar fasciitis, (R. at 23), a visit to the ED in July 2021, (R. at 24), physical therapy, (R. at 24), and reporting to the doctor for stiffness in her hands, (R. at 25). After discussing that history, the ALJ found that, "although [Gina] does have impairments that can be anticipated to produce a certain amount of limitations, she has not demonstrated" that she cannot perform light work. (R. at 37.) Ultimately, the ALJ's decision turned on his finding that Gina's subjective reports of her limitations—foremost among them was her pain—were not totally supported by the record. (*See* R. at 25–26 ("[A]lthough [Gina's] impairments could be anticipated to produce a certain amount of pain and limitation, the medical record does not demonstrate clearly that she has significantly limited range of motion, muscle atrophy, motor weakness, difficulty ambulating, or reflex abnormalities that are associated with intense and disabling pain.").) In other words, the evidence that Gina submitted was not entirely consistent with her own testimony. (*Compare* Pl. Br. 11 (asserting that Gina "could possibly lift a half-gallon of milk"), *with* R. at 510 (laboratory results from Lisa E. Snyder, M.D., finding that Gina's "strength overall is 4+ over 5 with grip strength . . . and the remainder of manual muscle testing is 5/5 in the upper extremities").) Because a reasonable mind would

11

accept the evidence in the Record as sufficient to support the ALJ's conclusion, the Court's inquiry is at an end. *See Richardson*, 402 U.S. at 401.

## II. Gina's Testimony About Her Pain

Gina's second challenge to the ALJ's opinion focuses on how the ALJ treated her testimony about her pain. In doing so, Gina makes two arguments: (1) the ALJ's opinion did not "include any substantive discussion of the regulatory factors applicable to credibility, (Pl. Br. 14); and (2) the ALJ "failed to discuss, in any detail," Gina's testimony and reports about her pain, (Pl. Br. 17.) The Court addresses each of these arguments in turn.

### A. Regulatory Factors Applicable to Pain

Gina rightly observes that the Social Security Regulations set forth a number of factors to determine the "intensity and persistence" of a claimant's symptoms and, in turn, the extent to which those symptoms limit a claimant's capacity for work. 20 C.F.R. § 416.929(c)(3).[7] Gina argues that the ALJ failed to address two of these factors: (1) the location, duration, and frequency of Gina's pain, and (2) precipitating and aggravating factors. (Pl. Br. 14–15.)

Yet "[a]n ALJ need not discuss every detail in the record as it relates to every factor," *Pufahl v. Bisignano*, 142 F.4th 446, 458 (7th Cir. 2025), so long as the ALJ "gives specific reasons supported by the record" for adopting or dismissing a

---

[7] Those factors include: (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate their pain or other symptoms; (v) treatment, other than medication, the claimant receives or has received for relief of their pain or other symptoms; (vi) any measures the claimant uses or has used to relieve their pain or other symptoms; and (vii) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929(c)(3).

claimant's subjective account of their symptoms, *Grotts v. Kijakazi*, 27 F.4th 1273, 1276 (7th Cir. 2022). Here, the ALJ recognized throughout his opinion that Gina "has reported a history of widespread pain." (R. at 25; *see also* R. at 26 ("The undersigned notes that the claimant testified at the hearing that she experiences chronic widespread pain that is worst in her hips, feet and back."); R. at 21 ("The claimant testified that she is most bothered by pain.").) After assessing the Record as a whole, however, the ALJ did not adopt wholesale Gina's testimony regarding her pain. Instead, he noted that Gina's "allegations regarding disability are not *fully* sustained by the record." (R. at 31 (emphasis added).) There was ample evidence to support the ALJ's conclusion on this score.

In arguing otherwise, Gina cites to several pages in the Record that the ALJ allegedly ignored. She observes (correctly) that the ALJ "may not ignore an entire line of evidence contrary to her ruling," and claim that the ALJ's opinion below suffered from that defect. (Pl. Br. 14 (quoting *Benito M. v. Kijakazi*, No. 20-cv-5976, 2022 WL 2828741, at *8 (N.D. Ill. July 20, 2022)).) Yet the portions of the Record that Gina cites to support that contention show that the ALJ did no such thing. (*See, e.g.*, R. at 22 (explaining that, in July 2020, Gina reported "less but still noticeable" pain levels); R. at 23 (explaining that, in August 20, Gina's nuclear stress test revealed "average exercise tolerance"); R at 23 (citing a March 2021 report that Gina's "right foot was feeling much better" and that her pain levels had "reduced by probably 67%").) Of course, the evidence does not tilt all on one direction. Gina did submit evidence—and the ALJ found—that she frequently experiences pain as a result of her

13

fibromyalgia. (*See, e.g.*, R. at 26 (noting that a consultative exam noted "tenderness to 18 of 18 trigger points" associated with a fibromyalgia diagnoses); R. at 25 (citing a report indicating that Gina "described some nagging aching[,] but less profound" pain); R. at 24 (explaining that Gina "continued to report joint pain in multiple sites" in October 2021).) The fact that there is conflicting evidence regarding the intensity and persistence of Gina's pain, however, does not warrant this Court to overturn the ALJ's opinion. Gina's appeal is in essence a plea to "reweigh the evidence," *Gedatus*, 994 F.3d at 900, which the Social Security Act expressly forbids, *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

The ALJ's therefore correctly incorporated the intensity and persistence of Gina's pain in light of the entire record, as the Social Security Regulations required him to. For that reason, Gina's argument that the ALJ did not discuss "precipitating and aggravating factors," (Pl. Br. 15) is similarly unavailing. Indeed, the ALJ detailed the factors that contribute to Gina's pain—most notably, her fibromyalgia diagnosis. In doing so, he considered the "provisions of Social Security Ruling 12-2-p," which makes clear that the "symptoms of fibromyalgia can wax and wane." (R. at 29.) And the evidence appeared to demonstrate that Gina's pain symptoms varied depending on when they were assessed. The ALJ's discussion therefore encompassed both the persistence of Gina's pain and the aggravating factors.

### B. ALJ's Discussion of Gina's Pain

Along similar lines, Gina's brief devotes several pages to portions of the record that the ALJ "failed to discuss." (Pl. Br. 15–17.) Again, the fact that the ALJ did not discuss every piece of evidence in the Record that supported Gina's testimony about her pain does not warrant reversal. Nor may this Court overturn the ALJ merely because the Record contains some evidence that refutes his decision. *See Gedatus*, 994 F.3d at 903 (clarifying that "the presence of contradictory evidence and arguments does not mean the ALJ's determination is not supported by substantial evidence").

In any case, the evidence that Gina cites does not undermine the ALJ's conclusion. For one thing, many of the medical opinions to which she refers shows that her pain was not as disabling as she claimed. (*See, e.g.*, R. at 488 ("The claimant was able to get on and off the exam table with no difficulty. The claimant could walk greater than 50 feet without support . . . . There was normal ability to grasp and manipulate objects."); R. at 683 (noting that Gina "exercise[s]" and "walks daily"); R. at 740 (noting that Gina was experiencing "less pain" and "less irritation" and that her pain was "not to the level, intensity, frequency it was previously"); R. at 761 ("50-year-old female follow-up right foot pain less pain less irritation.").) And much of the evidence that Gina cites to challenge the ALJ's opinion is *itself* subjective reports of pain, rather than the outcome of "medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). For example, Gina cites medical records that were generated when she visited doctors and reported pain. (*See, e.g.*, R. at 743

15

("Gina is a 50 y/o female presenting with joint pain . . . ."); R. at 683 ("49 y/o female with complaint of pain to the bottom of the right heel . . . ."). After considering the Record, the ALJ concluded that Gina's "symptoms were not as troublesome" as she had alleged and inconsistent with "the current claim of ongoing, disabling symptoms since the alleged onset date." (R. at 30.) The ALJ justified this conclusion, in part, based on the observation that "the treatment provided to the claimant for [her] conditions was generally routine and conservative." (R. at 26.) This, the ALJ reasoned, called into question Gina's "claim of ongoing, disabling symptoms since the onset date." (R. at 26; *see also* 20 C.F.R. § 416.929(c)(3) (explaining that the ALJ may consider "treatment, other than medication, the claimant receives or has received for relief of their pain or other symptoms").) As discussed above, there was substantial evidence to support that finding.

In short, Gina's argument that the ALJ failed to discuss her pain symptoms and account for them in his RFC assessment does not find support in the ALJ's opinion. The conflicting evidence in the Record was for the ALJ to consider and resolve, *see Warnell*, 97 F.4th at 1053, and because substantial evidence supported his decision, his findings are "conclusive." 42 U.S.C. § 405(g).

## CONCLUSION

The ALJ's decision is AFFIRMED.

*So ordered.*

Entered this 31st day of October 2025.

s/ Ronald L. Hanna

Ronald L. Hanna
United States Magistrate Judge
